UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL BEST**, <br><br> *Plaintiff*, <br><br> v. <br><br> **DISTRICT OF COLUMBIA**, <br><br> *Defendant*. | Civil Action No. 20-1134 (FYP) |

## MEMORANDUM OPINION

Plaintiff Michael Best brings this lawsuit against his employer, the District of Columbia Fire and Emergency Medical Services, alleging discrimination on the basis of his race, sex, and age, in violation of the D.C. Human Rights Act ("DCHRA"), D.C. Code §§ 2-1402.11 *et seq.*; retaliation under the DCHRA, D.C. Code §§ 2-1402.61 *et seq.*; and race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*  Defendant District of Columbia moves to dismiss, arguing that Plaintiff's claims are time-barred; and that Plaintiff fails to allege any adverse employment action in support of his discrimination claims, or any retaliatory acts linked to protected activity.  For the following reasons, the Court will grant Defendant's Motion to Dismiss.

### BACKGROUND

Plaintiff Michael Best is an African-American man over the age of 40, who is employed as a Lieutenant with the District of Columbia Fire and Emergency Medical Services ("DCFEMS").  *See* ECF No. 16 (Second Amended Complaint), ¶¶ 8–10.  Best makes a variety of factual allegations to support his claims of race, sex, and age discrimination in his workplace.

The first set of allegations pertain to Plaintiff's role in drafting charges of misconduct concerning his subordinates. *Id.*, ¶ 29.  Best alleges that between 2015 and 2018, his supervisors processed his misconduct reports in a racially discriminatory manner; and that they retaliated against him when he complained about their improper conduct. *Id.*, ¶ 11.  Specifically, in January of 2015, Best initiated disciplinary charges against a white employee. *Id.*, ¶ 69.  On November 11, 2016, Best claims to have learned that his superiors blocked those disciplinary charges. *Id.*, ¶¶ 12–13, 72.  By contrast, Plaintiff's disciplinary charges against a Black employee were pushed through. *Id.*, ¶¶ 69–70.  Additionally, Best alleges that on November 19, 2016, after he initiated disciplinary charges against another white employee, Assistant Fire Chief Edward Mills interfered in the investigation, making it impossible for Best's findings to be corroborated. *Id.*, ¶ 94.  Best claims that his supervisors' discriminatory interference with his disciplinary reports caused him to be "ostracized" and "undermined" his authority, resulting in a loss of "respect and consideration of his subordinates." *Id.*, ¶¶ 15–18.  Best complained about the racial disparities and improper handling of his reports to his superiors in May or June of 2016. *Id.*, ¶ 30.

Best pleads several other discrete incidents of alleged discrimination:  (1) In March of 2017, Best overheard two white coworkers tell his supervisor that they wanted Best transferred because he is Black, *id.*, ¶ 74; (2) in May or June of 2017, Best's supervisor showed him lewd videos and sexually explicit text messages concerning other DCFEMS employees, *id.*, ¶¶ 33–35; (3) in December of 2017, while at a Training Academy, Assistant Fire Chief Mills shook Plaintiff's hand and called him a "piece of shit," *id.*, ¶ 75; and (4) Best's coworkers repeatedly asked him when he would retire, or how much time he had left on the job, *id.*, ¶ 124.

On August 31, 2017, Best was notified that he was being placed on daily detail to other fire companies, which he claims is an assignment "for a lesser ranking officer." *Id.*, ¶ 36. A few days later, on September 3, 2017, Plaintiff was placed on a "long-term [daily] detail" to multiple other fire companies, allegedly in response to his complaints of discrimination. *Id.*, ¶¶ 42, 45. On daily detail, Best had to move between firehouses continuously and engage with new crews regularly. *Id.*, ¶ 49. Being on long-term daily detail required Best to be on the road; to transport his dress blues, gear, and food around; and to lose access to a private locker. *Id.*, ¶¶ 47–49. Best claims that the daily detail "severely affected the terms and conditions of his employment and affected his ability to enjoy his work environment and work experience the same as his white co-workers." *Id.*, ¶ 90. Moreover, on May 4, 2018, Plaintiff "was involuntarily transferred to an assignment," the details of which are not described. *Id.*, ¶ 98.

## PROCEDURAL HISTORY

On May 19, 2017, Best filed an initial written complaint with the D.C. Office of Human Rights ("DCOHR"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). *Id.*, ¶ 3. Best filed a notarized Charge of Discrimination with the EEOC on February 12, 2018, alleging discrimination based on his sex and his race. *See generally* ECF No. 12-2 (Charge of Discrimination). In the Charge of Discrimination, Best claimed that he was subjected to sex discrimination when his supervisor, Captain Charles Stewart, showed Best lewd materials in June of 2017. *Id.* Best also alleged that he complained about race discrimination in the workplace; and that his subsequent assignment to daily detail constituted both race discrimination and retaliation for his complaints. *Id.* The record does not contain information about how the DCOHR and EEOC charges were resolved.

3

On April 30, 2020, Best filed suit in this Court. *See* ECF No. 1. In the Second Amended Complaint at issue here, Best asserts claims of race discrimination under the DCHRA (Count I); retaliation under the DCHRA (Count II); sex discrimination under the DCHRA (Count III); age discrimination under the DCHRA (Count IV); and race discrimination under Title VII (Count V). *See generally* Sec. Am. Compl. Best seeks compensatory damages, attorney's fees, and declaratory and injunctive relief. *See generally id.*

On May 20, 2021, Defendants filed the instant motion to dismiss. *See* ECF No. 18 (Defendant's Motion). Plaintiff filed an opposition on June 25, 2021, *see* ECF No. 20 (Plaintiff's Opposition);[1] and Defendant filed a reply on July 15, 2021, *see* ECF No. 21 (Defendant's Reply).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6)

---

[1] Plaintiff attaches numerous documents to his Opposition to Defendant's Motion to Dismiss, including Plaintiff's own affidavit, emails that he exchanged with the Equal Employment Opportunity Commission, and various text messages. *See* ECF No. 20 (Plaintiff's Opposition) at Exs. B–E. But Plaintiff may not amend his Complaint in his opposition brief. *See Arbitraje Casa de Cambio, S.A. de C.V. v. USPS*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citations omitted). The Court has not considered any of Plaintiff's supplementary materials, as they were not referred to in the Complaint. *See Cooper v. First Gov't Mortg. & Investors Corp.*, 206 F. Supp. 2d 33, 35–36 (D.D.C. 2002) (a court may choose to ignore supplementary materials and address the motion as a motion to dismiss; or the court may consider additional documents without converting the motion to one for summary judgment when they are referred to in the complaint).
 Plaintiff also attaches a proposed Third Amended Complaint to his Opposition. *See* Pl. Opp. at Ex. A. That filing also is not properly before the Court: Plaintiff was required to move for leave to amend his pleading and has not done so. *See* Fed. R. Civ. P. 15(a)(2). Even if Plaintiff had properly moved to amend the complaint, however, the proposed Third Amended Complaint still fails to state a claim of race, sex, or age discrimination. Plaintiff fails to allege additional facts to raise his claims "above the speculative level," *Twombly*, 550 U.S. at 555–56; and the Third Amended Complaint is therefore futile. *See Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002) ("An amended complaint would be futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss."). In any event, Plaintiff has already had two opportunities to cure deficiencies in his Complaint, and the Court is not inclined to grant Plaintiff a third attempt.

4

motion, *id.* at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When considering a motion to dismiss, a court must construe a complaint liberally in the plaintiff's favor, "treat[ing] the complaint's factual allegations as true" and granting "plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations and quotation marks omitted); *see also Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Although a plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## ANALYSIS

Best brings claims of (1) race discrimination under the DCHRA and Title VII; (2) sex discrimination under the DCHRA; (3) age discrimination under the DCHRA; and (4) retaliation under the DCHRA. *See generally* Sec. Am. Compl. Defendant argues that Best's claims are untimely; and that Best otherwise fails to state a claim because he does not allege any conduct that amounts to an adverse employment action and does not allege facts that support a finding of retaliation. The Court addresses these arguments in turn.

### I.   Timeliness

#### a.   Title VII

Best brings one count of race discrimination under Title VII. *Id.*, ¶¶ 158–161. Before filing suit under Title VII, a plaintiff must exhaust his administrative remedies. *See Coleman v. Duke*, 867 F.3d 204, 206 (D.C. Cir. 2017). To exhaust administrative remedies, a complainant is required to "file a charge of discrimination with the EEOC within 180 days of the alleged

unlawful employment practice," *Lattisaw v. District of Columbia*, 118 F. Supp. 3d 142, 154 (D.D.C. 2015), unless he has "initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice," in which case he must file a charge within 300 days, *see* 42 U.S.C. § 2000e-5(e)(1). The 300-day period applies "where a worksharing agreement exists between the EEOC and a local fair employment practices agency." *Carter v. George Wash. Univ.*, 387 F.3d 872, 879 (D.C. Cir. 2004). Therefore, because "the EEOC has such an agreement with the [DCOHR]," *id.* at 879, a plaintiff in the District of Columbia "has 300 days to file a charge with the EEOC." *Proctor v. District of Columbia*, 74 F. Supp. 3d 436, 455 (D.D.C. 2014); *see also Duberry v. Inter-Con Sec. Sys., Inc.*, 898 F. Supp. 2d 294, 298 (D.D.C. 2012) ("In the District of Columbia, such an EEOC charge must be filed within 300 days of the allegedly discriminatory/retaliatory act.").

Additionally, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," because "[e]ach discrete discriminatory act starts a new clock for filing charges alleging the act." *Nat'l R&R Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Zuurbier v. Medstar Health, Inc.*, 895 A.2d 905, 911 (D.C. 2006) ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." (internal quotations omitted) (citations omitted)).

Defendant argues that the race-discrimination claim under Title VII based on alleged interference with Best's disciplinary reports is time-barred. *See* Def. Mot. at 4–5. Although Best filed an initial written complaint with the DCOHR and EEOC on May 19, 2017, alleging race discrimination, *see* Sec. Am. Compl., ¶ 3, he did not file an Initial Charge of Discrimination until

6

February 12, 2018.[2]  *See* Pl. Opp. at 11; *see also Craig v. District of Columbia*, 74 F. Supp. 3d 349, 366 (D.D.C. 2014) (explaining that a charge filed with the EEOC "is automatically cross-filed with the [DCOHR]").  It is the filing of the Charge of Discrimination that is relevant to the timeliness question, not the initial contact or initial written complaint.  *See University of Pa. v. EEOC*, 493 U.S. 182, 190 (1990) (EEOC responsibilities are "triggered by the filing of a specific *sworn charge* of discrimination" (emphasis added)); *see also* 29 C.F.R. § 1626.3 (EEOC regulations distinguish between a "charge" and a "complaint," the latter defined as "information received from any source, that is not a charge, which alleges that a named prospective defendant" has violated Title VII); *Park v. Howard Univ.*, 71 F.3d 904, 908 (D.C. Cir. 1995) ("[T]he pre-complaint questionnaire is not the same as an EEOC charge — it even states on its face that there is no guarantee that the information submitted will constitute a basis for filing a formal complaint." (cleaned up)); *Hodges v. Northwest Airlines, Inc.*, 990 F.2d 1030, 1032 (8th Cir. 1993) (holding that an unsworn EEOC questionnaire "did not constitute a valid charge under Title VII").  While Plaintiff categorizes his May 19, 2017, contact with the EEOC as an "initial written complaint/Charge" in his Complaint, *see* Sec. Am. Compl., ¶ 3, Plaintiff apparently concedes that no sworn charge of discrimination was filed until February 12, 2018.  *See* Pl. Opp. at 11 ("Plaintiff filed a notarized Charge of Discrimination on February 12, 2018."); *see also* Charge of Discrimination (stating that an initial complaint was received by the EEOC on May 19, 2017).

Thus, any discriminatory acts that took place before April 18, 2017 — 300 days before the Initial Charge was filed on February 12, 2018 — are time barred.  Best alleges that the

---

[2]  Although Plaintiff's Charge of Discrimination does not specifically reference the disciplinary reports, both parties seem to assume that the race discrimination alleged in the Charge encompasses Plaintiff's claims regarding the disciplinary reports.  *See* Def. Mot. at 4–5; Pl. Opp. at 11–12.

discriminatory acts related to his disciplinary reports occurred in 2015 and 2016, with Best learning about the alleged interference in November of 2016. *See* Sec. Am. Compl., ¶¶ 11–13, 72. Because all of those operative dates were more than 300 days before the Charge of Discrimination was filed, any discrimination claims stemming from the disciplinary reports are time-barred. Also time-barred is Best's claim based on racially discriminatory comments made by coworkers in March of 2017. *See* Sec. Am. Compl., ¶ 151. Best's other allegations of race discrimination under Title VII, however, are not time-barred, as they occurred within the 300-day time period. These include his assignment to daily detail in August and September of 2017; and the derogatory comments from his supervisor in December of 2017.

      b. <u>DCHRA</u>

Defendant argues that Best's DCHRA claims are time-barred, because all the alleged discriminatory acts occurred more than one year before the Complaint was filed in April 2020. *See* Def. Mot. at 5–6. DCHRA claims have a one-year statute of limitations. *See* D.C. Code § 2-1403.16. But the filing of a timely charge with the EEOC and DCOHR tolls the statute of limitations. *See id.* ("The timely filing of a complaint with the [DCOHR] . . . shall toll the running of the statute of limitations while the complaint is pending."); *see also Hatter v. WMATA*, 105 F. Supp. 3d 7, 10 (D.D.C. 2015) ("A charge filed with the EEOC . . . suffices to toll the one-year statute of limitations for DCHRA claims." (citation omitted)). The statute of limitations begins running again when the EEOC "relinquishes jurisdiction over the matter." *Ibrahim v. Unisys Corp.*, 582 F. Supp. 2d 41, 45 (D.D.C. 2008); *see also Miller v. Gray*, 52 F. Supp. 3d 62, 69 (D.D.C. 2014) ("[O]nce the EEOC charge was filed, the DCHRA's one year statute of limitations [is] tolled until the plaintiff receive[s] a notice from the EEOC of his right to sue.").

Here, Plaintiff filed his Initial Charge on February 12, 2018, thereby tolling the statute of limitations and permitting him to file claims based on conduct that occurred within the preceding year. Such claims would include his assignment to daily detail in August and September of 2017; his coworker's comments in March of 2017; his supervisor's comments at the Training Academy in December of 2017; and his supervisor showing him lewd material in May or June of 2017. The allegations regarding the disciplinary reports in 2016 fall outside the relevant period and are time-barred.

## II.   Race Discrimination under Title VII and the DCHRA

It is an "unlawful discriminatory practice" under the DCHRA to "discriminate against any individual, with respect to his or her[] compensation, terms, conditions, or privileges of employment" based on "race, color, religion, national origin, sex, [or] age." D.C. Code § 2-1402.11(a)(1)(A). Title VII similarly bars discriminatory employment practices based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "This statutory text establishes two elements for an employment discrimination case: (i) the plaintiff suffered an adverse employment action (ii) because of the employee's race, color, religion, sex, or national origin." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008); *see also Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (stating same); *Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006) (explaining that a prima facie case of discrimination requires that the "unfavorable action gives rise to an inference of discrimination"). The same framework applies for discrimination claims under both the DCHRA and Title VII. *See McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 3 (D.C. Cir. 2010).

To establish a claim of discrimination, a plaintiff must present facts that "gives rise to an inference of discrimination." *Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007) (citation

omitted). The pleadings must allow a causal inference that the protected trait was a motivating factor for the adverse employment action. *See Slate v. Public Def. Serv. for D.C.*, 31 F. Supp. 3d 277, 288–89 (D.D.C. 2014).

Best alleges race discrimination based on numerous incidents during his tenure at DCFEMS, including his superiors' interference with his disciplinary reports, his assignment to long-term daily detail, a racially motivated comment made by coworkers, and a negative comment made by his supervisor. *See generally* Sec. Am. Compl. Defendant argues that none of those incidents is an adverse employment action under the DCHRA or Title VII. *See generally* Def. Mot.

An adverse employment action is a "significant change in employment state, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Ng v. Lahood*, 952 F. Supp. 2d 85, 91 (D.D.C. 2013) (citation omitted); *see also Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (stating that an adverse employment action must materially affect the "terms, conditions, or privileges of employment such that a reasonable trier of fact could find objectively tangible harm" (cleaned up)). In most circumstances, "an adverse employment action will 'inflict direct economic harm.'" *Blackwell v. SecTek, Inc.*, 61 F. Supp. 3d 149, 158 (D.D.C. 2014) (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 762 (1998)).

    a. <u>Disciplinary Reports</u>

As previously discussed, Best's claim regarding his disciplinary reports is not actionable because it is time-barred under both Title VII and the DCHRA. *See supra* Section I. Alternatively, that claim also fails because the alleged conduct does not amount to an adverse employment action. According to Best, his disciplinary reports were denied or blocked based on

the race of the employees whose misconduct was described in the reports; and when Best learned of the disparate treatment based on race, he complained about it to his supervisors. *See* Sec. Am. Compl., ¶¶ 30, 60. Best asserts he had "his authority undermined as a black officer," *id.*, ¶ 15, was impeded in carrying out his duties, *id.*, ¶ 16, lost the respect of his subordinates, *id.*, ¶ 18, and was ostracized "because he is black and because he spoke out against race discrimination," *id.*, ¶ 76.

Although the alleged disparate treatment of Black employees who were subject to discipline could support an inference of racial discrimination, the victims of that discrimination would be the Black firefighters who were disciplined when their similarly situated, white counterparts were not. Plaintiff, as the Lieutenant who wrote the disciplinary reports, did not personally suffer from any adverse employment action when his supervisors allegedly processed his reports in a discriminatory way. His assertions about loss of authority and respect, and being hampered in the performance of his duties, do not rise to the requisite level of "tangible harm" or "direct economic harm." *Id.*, ¶¶ 15–18; *see Forkkio v. Powell*, 306 F.3d 1127, 1130–31 (D.C. Cir. 2002) (stating that adverse employment action must entail objective harm, and purely subjective harms, such as dissatisfaction or humiliation, are not adverse). Because Best fails to proffer any facts that demonstrate a "significant change in [his] employment state," *see Ng*, 952 F. Supp. 2d at 91, based on the handling of his disciplinary reports, those allegations fail to support a claim of race discrimination.

  b. <u>Long-Term Daily Detail</u>

Best also alleges that he suffered an adverse, racially motivated employment action when he was sent on long-term daily detail, which was an undesirable assignment that would not ordinarily be foisted upon a Lieutenant. *See* Sec. Am. Compl., ¶ 60. Best asserts that the daily details "severely affected the terms and conditions of his employment and affected his ability to

enjoy his work environment and work experience the same as his white co-workers." *Id.*, ¶ 90. According to Best, while on daily detail, he did not have access to a private locker, was required to transport his equipment and food, and had to engage with a new crew on each shift. *Id.*, ¶¶ 48–49.

"[C]hanges in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes." *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C. Cir. 1997). Moreover, "minor inconveniences and alteration of job responsibilities do not rise to the level of adverse action necessary to support a claim." *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (cleaned up). But "reassignment with significantly different responsibilities" can constitute adverse action. *Youssef v. FBI*, 687 F.3d 397, 401 (D.C. Cir. 2012); *see also Holcomb v. Powell*, 433 F.3d 889, 902–03 (D.C. Cir. 2006) (finding that an "extraordinary reduction in responsibilities" that were "far below [employee's] grade level" may constitute adverse action).

Although the parties dispute whether the inconveniences associated with the long-term daily detail were significant enough to make the assignment an adverse employment action,[3] Best's claim in this regard fails for a different reason: He does not sufficiently allege a causal connection between his race and his assignment to the daily detail. *See Slate*, 31 F. Supp. 3d at 288–89 (stating that the pleadings must allow a causal inference that the protected trait was a motivating factor for the adverse employment action). Best offers only conclusory statements to establish the necessary element of causation and fails to marshal any facts to support his

---

[3] Defendant argues that the changes in work environment are mere inconveniences, and do not rise to the level of a "significant change in employment status." *See* Def. Mot. at 9 (quoting *Ng*, 952 F. Supp. 2d at 91). Defendant further asserts that assignment to long-term daily detail is not an adverse employment action because it did not result in a reduction of rank or change in salary. *Id.* Best, on the other hand, characterizes the long-term daily detail as a "demotion in every sense of the word." *See* Pl. Opp. at 15. He contends that his responsibilities were significantly diminished while on daily detail and that the assignment affected how he could manage and perform his duties. *Id.* at 13–15.

assertions. *See* Sec. Am. Compl., ¶ 61 ("The adverse employment actions . . . were taken solely because of his race."); *id.*, ¶ 62 ("Plaintiff's race played a motivating role and/or contributed to defendant's decision to take the actions taken against plaintiff."). Such bare allegations are insufficient to establish the necessary inference that the adverse action was racially motivated. *See Krodel v. Young*, 748 F.2d 701, 705 (D.C. Cir. 1984) (stating that a plaintiff must "demonstrate sufficient facts to create a reasonable inference that race . . . *was a factor* in the employment decision at issue" (emphasis added)); *Poola v. Howard Univ.*, 147 A.3d 267, 280 (D.C. 2016) (holding that plaintiff must plead a "nexus between the adverse employment actions and the alleged discriminatory motive").

Notably, the timing of the detail assignment does not support an inference of causation. Best was assigned to the daily detail on August 31, 2017, *see* Sec. Am. Compl., ¶ 36, and his other allegations about racial discrimination concern temporally remote incidents that occurred in May or June of 2016 (racial disparity in processing disciplinary reports, *see id.*, ¶ 30); March of 2017 (statement by coworkers, *see id.*, ¶ 74); and December of 2017 (statement by supervisor at Training Academy, *see id.*, ¶ 75). Thus, Best fails to allege facts that could support a finding that his assignment to the long-term daily detail was somehow related to other alleged discriminatory behavior, and that the assignment was made *because of* his race, as is required under Title VII and the DCHRA. *See Baloch*, 550 F.3d at 1196.

    c. Other Discriminatory Acts

Best further alleges that he was subject to adverse employment actions when his coworkers made racially motivated comments about him, *see* Sec. Am. Compl., ¶¶ 60, 74, and when his supervisor verbally harassed him, *id.*, ¶¶ 67, 75. Specifically, Best asserts that two white firefighters told his supervisor that they wanted him transferred because he is Black, *id.*, ¶¶ 74, 151; and that a supervisor called him a "piece of shit" when he was at the Training Academy,

13

*id.*, ¶¶ 75, 152.  Even putting aside the fact that the second statement is not, on its face, race-related, those two incidents cannot be characterized as adverse employment actions.  While the alleged comments were improper and undoubtedly hurtful, Plaintiff did not suffer from any change in employment status as a result of the negative statements.  *See Ng*, 952 F. Supp. 2d at 91.[4]  Courts have specifically held that off-hand or occasional offensive comments do not constitute a materially adverse employment action.  *See, e.g.*, *Weng v. Solis*, 960 F. Supp. 2d 239, 249–50 (D.D.C. 2013) (holding that offensive statements are not adverse employment action); *Slate*, 31 F. Supp. 3d at 295 (finding that "offensive and repugnant" statements by supervisors are not adverse employment action).  Therefore, the comments of Best's coworkers and supervisor do not, in themselves, support a racial discrimination claim under the DCHRA or Title VII.

### III.  Sex Discrimination under the DCHRA

Best's claim of sex discrimination is based on the allegation that his supervisor once showed Best lewd videos and sexually explicit texts against his wishes.  *See* Sec. Am. Compl., ¶ 113.  Best, however, does not allege that this single incident caused any change in the terms, conditions, or privileges of his employment.  *See Douglas*, 559 F.3d at 552 (stating that an adverse employment action must affect the terms, conditions, or privileges of employment).  While this behavior was unwelcome, "not everything that makes an employee unhappy is an actionable adverse action."  *See Walden v. Patient-Centered Outcomes Research Inst.*, 304 F. Supp. 3d 123, 133 (D.D.C. 2018).  Furthermore, there is no indication that his supervisor showed him the lewd materials *because of* his sex.  *See Oncale v. Sundowner Offshore Srvs., Inc.*, 523

---

[4]   Although Best argues that the comment from his supervisor undermined him and his ability to supervise his subordinates, *see* Pl. Opp. at 14, the Court has already explained, *supra*, that such intangible harms do not constitute an adverse employment action.

U.S. 75, 80–81 (1998) ("[Plaintiff] must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination *because of sex*." (cleanup up) (emphasis added)).  Thus, Plaintiff fails to state a claim of sex discrimination under the DCHRA.[5]

## IV.     Age Discrimination under the DCHRA

Best's age discrimination claim is based on the allegation that his coworkers constantly asked him when he would retire and how much time he had left on his job.  *See* Sec. Am. Compl., ¶¶ 54, 124.  Plaintiff further alleges that his assignment to long-term daily detail was "due to his age." *Id.*, ¶ 125.  This claim fares no better than his sex discrimination claim.  First, comments about Plaintiff's age and retirement prospects by coworkers are not adverse employment actions.  *See Garrett v. Lujan*, 799 F. Supp. 198, 200 (D.D.C. 1992) ("Stray remarks by persons not involved in the employment decision-making process are not material to a finding of discrimination."); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[O]ffhand comments, and isolated incidents . . . will not amount to discriminatory changes in the terms and conditions of employment." (internal quotations omitted)).  Second, Best does not proffer any facts that support his contention that he was assigned to the daily detail because of his age.  *See Jianqing Wu v. Special Counsel, Inc.*, 54 F. Supp. 3d 48, 52 (D.D.C. 2014) (holding that a plaintiff "must present facts that give rise to an inference of discrimination" to survive dismissal).  Plaintiff's perfunctory statement that he was re-assigned due to his age is insufficient.  *See Iqbal*, 552 U.S. at 678.  Best, therefore, fails to state a claim of age discrimination under the DCHRA.

---

[5]     Best argues that the EEOC has upheld claims of sex discrimination where "sexually explicit material is stored and passed around the workplace." *See* Pl. Opp. at 16.  But that argument does not apply to the facts alleged in this case.  Here, Best's sex-discrimination claim concerns only a single incident, in which a supervisor allegedly showed Best lewd material.  *See* Sec. Am. Compl., ¶¶ 32–35.  Plaintiff's reliance on precedents involving more pervasive conditions is thus misplaced.

V.      **Retaliation**

Best alleges that he was assigned to the long-term daily detail in retaliation for his engagement in protected activity, *i.e.*, his complaints about discrimination in the workplace made to his supervisors, the EEOC, and the DCOHR. See Sec. Am. Compl., ¶¶ 94–111. Defendant argues that: (1) Plaintiff did not engage in any protected activity; (2) Plaintiff suffered no adverse employment action; and (3) even if there were protected activity and an adverse action, Plaintiff has not shown a causal connection between the two. See Def. Mot. at 11–12.

The DCHRA makes it unlawful to "retaliate against, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected under this chapter." D.C. Code § 2-1402.61(a). To make out a prima facie case of retaliation, a plaintiff must show "(1) that he engaged in statutorily protected activity; (2) that he suffered materially adverse action by his employer; and (3) that a causal link connects the two." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009) (citing *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007)). "An activity is 'protected' for the purposes of a retaliation claim 'if it involves opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment.'" *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 91 (D.D.C. 2006) (quoting *Coleman v. Potomac Elec. Power Co.*, 422 F. Supp. 2d 209, 212-13 (D.D.C. 2006)). "[P]laintiff must be opposing an employment practice made unlawful by the statute under which [he] has filed [his] claim of retaliation." *Id.* at 91–92. Protected activity "extend[s] to an employee's informal complaints of discrimination to his or her superiors within the organization." *Carter-Obayuwana v. Howard Univ.*, 764 A.2d 779, 790–91 (D.C. 2001).

Notably, "[i]n the retaliation context the 'adverse action' concept has a broader meaning" than in a discrimination context. *Baird v. Gotbaum*, 662 F.3d 1246, 1249 (D.C. Cir. 2011). "A materially adverse action is one that could well dissuade a reasonable worker from making or

16

supporting a charge of discrimination." *Porter v. Shah*, 606 F.3d 809, 817–18 (D.C. Cir. 2010) (citations omitted). But the "work-related retaliation must have 'tangible job consequences' in order to qualify as materially adverse." *Wesley v. Georgetown Univ.*, No. 18-1539, 2018 WL 5777396, at * 5 (D.D.C. Nov. 2, 2018) (citing *Taylor*, 571 F.3d at 1321).

Best asserts that he engaged in protected activity when he raised claims of discrimination to his supervisors and when he contacted the EEOC and DCOHR about alleged discrimination. Filing a written complaint with the EEOC or DCOHR is, indeed, protected activity. *See Lemmons*, 431 F. Supp. 2d at 91 (protected activity includes "participating in legal efforts against the alleged treatment"). Thus, Best engaged in protected activity when he filed his initial written complaint with the EEOC, which was cross-filed with the DCOHR. *See* Sec. Am. Compl., ¶ 3. Although Best's allegations concerning his internal complaints to his supervisors are somewhat vague, the Court views the facts in the light most favorable to the Plaintiff and assumes the truth of his allegations at this stage of the proceedings. *Id.*, ¶ 30 ("Plaintiff complained about racial disparities and discrimination"); *id.*, ¶ 42 ("Plaintiff[] complain[ed] of discrimination"); *id.*, ¶ 97 ("Plaintiff was retaliated against for his complaints about race discrimination").

But even assuming, *arguendo*, that Best engaged in protected activity and that his assignment to the long-term daily detail constituted an adverse employment action, Best fails to allege any facts that would show a causal connection between his protected activity and the undesirable assignment. In the Complaint, Plaintiff offers only conclusory statements that his assignment was retaliatory in nature. *Id.*, ¶¶ 97–98 (stating that "Plaintiff was retaliated against for his complaints about race discrimination . . . through being placed in a long-term daily work tour detail" and that there were "attempts to transfer" Plaintiff "as retaliation for his complaints of race discrimination"). Moreover, the timing of the detail assignment does not support an

inference of retaliation.  Best's internal complaints about discrimination allegedly occurred in May or June of 2016, *see id.*, ¶ 30; and his written complaint was filed with the EEOC on May 19, 2017, *see id.*, ¶ 3.  Best was not informed of his assignment to the daily detail until August 31, 2017.  The three and a half months that elapsed between his initial contact with the EEOC and the detail assignment do not support an inference that the two events were connected.  *See Pauling v. District of Columbia*, 286 F. Supp. 3d 179, 208 (D.D.C. 2017) (finding five months too attenuated to show a causal connection); *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that a three or four month period between the protected activity and an adverse action could not show a causal connection); *Taylor v. Solis*, 571 F.3d at 1322 (finding a two-and-a-half month interval insufficient to show causation based on temporal proximity).[6]  Best therefore fails to allege facts that state a claim of retaliation under the DCHRA.

## CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss.  A separate Order will issue this day.

                                                                                                            FLORENCE Y. PAN
                                                                                                            United States District Judge

Date:  March 17, 2022

---

[6] Best, for the first time in his Opposition, alleges that he complained about the disparate treatment of disciplinary charges against African American and Caucasian employees in August or September of 2017.  *See* Pl. Opp. at 16–17.  Best also includes a lengthy argument involving Mohamed Goodwin and overheard racially inflammatory comments.  *See id.* at 19–20.  Because Plaintiff cannot amend his Complaint in his Opposition to the Motion to Dismiss, the Court declines to consider these allegations and arguments.  *See Arbitraje Casa de Cambio, S.A. de C.V.*, 297 F. Supp. 2d at 170 ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citations omitted).